******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ISABELLA D. ET AL. *v.* DEPARTMENT OF
CHILDREN AND FAMILIES ET AL.*
(SC 19451)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued October 13, 2015—officially released January 19, 2016*

*Alan Giacomi*, with whom were *Robert S. Kolesnik,
Sr.*, and, on the brief, *Stephanie E. Cummings*, for the
appellants (plaintiffs).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellees (defendants).

*Opinion*

EVELEIGH, J. The sole issue in this administrative appeal is whether the trial court properly concluded that the plaintiff Isabella D.[1] lacks standing to appeal from the final decision of the defendant the Department of Children and Families (department)[2] finding that the alleged perpetrator was not responsible for allegations of sexual abuse and emotional neglect against the plaintiff and removing his name from the central child abuse and neglect registry (central registry).[3] On appeal to this court, the plaintiff claims that the trial court improperly concluded that she lacks standing to bring this action. Specifically, the plaintiff claims that she has a specific, personal and legal interest in the department's decision because her constitutionally protected interests in her reputation, privacy, safety, and family integrity were implicated as a result of the department's substantiation process, and that these interests were harmed by the department's decision. The plaintiff further claims that these interests were harmed by the alleged perpetrator's use of the department's decision in a collateral family court proceeding. In response, the department contends that the plaintiff was not classically aggrieved by its decision because the plaintiff cannot establish a specific, personal and legal interest in the substantiation process that is distinguishable from that of the general public. The department further claims that the plaintiff was not statutorily aggrieved because she is not within the zone of interests intended to be protected by the statutory scheme. We agree with the department and conclude that the trial court properly determined that the plaintiff lacks standing to bring this action.[4]

The record reveals the following undisputed facts and procedural history. As a result of a mandated reporter's anonymous referral, the department instituted an investigation into possible sexual abuse of the plaintiff pursuant to General Statutes § 17a-101g.[5] Following the investigation, the department's investigator found the alleged perpetrator responsible for sexual abuse and emotional neglect of the plaintiff and placed the alleged perpetrator's name on the central registry. As a result of the alleged perpetrator's request for an appeal pursuant to § 17a-101k-4 (a) of the Regulations of Connecticut State Agencies,[6] the department conducted an internal review and notified the alleged perpetrator of the decision to uphold the substantiation of sexual abuse and emotional neglect and the decision to place the alleged perpetrator's name on the central registry. Thereafter, the alleged perpetrator sought an administrative hearing. After a hearing, the hearing officer found that there was insufficient evidence to support a finding of substantiation of sexual abuse and emotional neglect by the alleged perpetrator. The hearing officer, therefore, reversed the department's finding of substantiation and removed the alleged perpetrator's name from the cen-

tral registry.

Subsequently, the plaintiff sent a letter to the department requesting that the hearing officer reconsider the decision reversing the substantiation finding. As grounds for reconsideration, the plaintiff asserted that "without the opportunity to be notified of (let alone participate in), the hearings process, [the plaintiff] was deprived of the opportunity to present evidence in her own defense or to pursue challenges to the credibility, authenticity, reliability or admissibility of any of the evidence introduced by [the alleged perpetrator]." The hearing officer denied the plaintiff's request on the basis that the plaintiff lacked standing to seek reconsideration. As grounds for the decision, the hearing officer explained that because General Statutes § 4-181a[7] solely permits a *party* to a contested hearing to file a petition for reconsideration and, because the plaintiff was not a party to the substantiation hearing, the plaintiff did not have standing to appeal the department's decision.

From that decision, the plaintiff filed an administrative appeal pursuant to General Statutes § 4-183 (a) of the Uniform Administrative Procedure Act.[8] At the trial court, the department moved to dismiss the plaintiff's claims for lack of subject matter jurisdiction on the ground that the plaintiff lacked standing to bring the administrative appeal. Following oral argument on the issue of standing, the trial court granted the department's motion to dismiss. This appeal followed.[9]

By way of background, we briefly summarize the substantiation process and the central registry scheme as set forth in General Statutes §§ 17a-101g[10] and 17a-101k.[11] As this court has previously explained, "§ 17a-101g sets forth the [department's] responsibilities upon receiving a report of abuse or neglect of a child: classification; evaluation; investigation; and determination of whether abuse or neglect has occurred." (Internal quotation marks omitted.) *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 418, 94 A.3d 588 (2014). If, after an investigation into the report, the department has reasonable cause to believe that the child has been " 'neglected' " or " 'abused' " as defined by statute; General Statutes § 46b-120 (6) and (7); the allegations of misconduct are deemed substantiated.[12] Once the investigation is complete, the department must notify the child's parents or guardians, the alleged perpetrator, and the mandated reporter of the outcome of the investigation. Dept. of Children & Families, Policy Manual § 34-3-6 (Policy Manual).[13]

Section 17a-101k (a) requires the department to maintain a central registry of the names of individuals whom the department has found to have abused or neglected children pursuant to the investigative process. If the allegations of abuse or neglect are substantiated after the investigation, § 17a-101g (b) directs the department to additionally determine "whether: (1) [t]here is an

identifiable person responsible for such abuse or neglect; and (2) such identifiable person poses a risk to the health, safety or well-being of children and should be recommended . . . for placement on the child abuse and neglect registry . . . ." See also Regs., Conn. State Agencies § 17a-101k-3 (a); Policy Manual, supra, § 34-2-8. In some cases, however, the placement of the alleged perpetrator's name on the central registry is required. See Regs., Conn. State Agencies § 17a-101k-3 (b).[14]

"If the commissioner determines that a person should be listed on the [central] registry, that information is confidential, except where authorized specifically by statute or regulation, and unlawful disclosure is a criminal offense. . . . Statutes that authorize disclosure are limited to specific governmental agencies or persons directly involved with child protection and agencies that license persons providing child care services or that employ persons charged with child protection, such as the [department], the [D]epartment of [P]ublic [H]ealth and the [D]epartment of [S]ocial [S]ervices. . . . Mindful of the potential effect of such disclosures, § 17a-101k (b) (3) provides in relevant part: 'Upon the issuance of a recommended finding that an individual is responsible for abuse or neglect of a child pursuant to subsection (b) of section 17a-101g, the commissioner shall provide notice of the finding . . . to the individual who is alleged to be responsible for the abuse or neglect.' " (Citations omitted.) *Hogan* v. *Dept. of Children & Families*, 290 Conn. 545, 570–71, 964 A.2d 1213 (2009).

Section 17a-101k further provides a two stage appeal process for individuals who have been substantiated as responsible for child abuse or neglect. Once an individual exercises his or her right to appeal the substantiation decision, "[t]he individual or the individual's representative may submit any documentation that is relevant to a determination of the issue and may, at the discretion of the commissioner or the commissioner's designee, participate in a telephone conference or face-to-face meeting to be conducted for the purpose of gathering additional information that may be relevant to determining whether the recommended finding is factually or legally deficient." General Statutes § 17a-101k (c) (2); see also Regs., Conn. State Agencies § 17a-101k-5. The individual is also provided access to all documents in the possession of the department relevant to the substantiation of abuse or neglect. General Statutes § 17a-101k (c) (1). In the event that the recommended finding of abuse or neglect is found to be "factually or legally deficient," the department must notify the individual of the decision to reverse the recommended finding. General Statutes § 17a-101k (c) (3); see also Regs., Conn. State Agencies § 17a-101k-5 (e). If the finding is upheld, the department must notify the individual of the right to request an administrative hearing. General Statutes § 17a-101k (c) (3); see also

Regs., Conn. State Agencies § 17a-101k-5 (f) and (g).

Section 22-12-6 of the Policy Manual provides that the alleged perpetrator and the department are the only parties to the administrative hearing.[15] Furthermore, although the hearing officer has the discretion to permit others to be present at the hearing, the Policy Manual specifically provides that "[t]he only authorized persons at the hearing shall be" the parties, their authorized representatives, and witnesses. Policy Manual, supra, § 22-12-6. The alleged perpetrator can seek legal representation for the hearing. General Statutes § 17a-101k (d) (2); see also Regs., Conn. State Agencies § 17a-101k-8 (a). Within thirty days, the hearing officer must issue a written decision, either reversing or upholding the substantiation finding. General Statutes § 17a-101k (d) (3). Section 17a-101k (e) permits "[a]ny individual aggrieved by the decision of the hearing officer" to appeal the decision pursuant to § 4-183. See also Regs., Conn. State Agencies § 17a-101k-11 (b).

With this procedural background in mind, we turn to the applicable legal principles and the standard of review. "Standing is established by showing that the party claiming it is authorized by statute to bring an action, in other words, statutorily aggrieved, or is classically aggrieved. . . . [Statutory] [s]tanding concerns the question [of] whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. . . .

"The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Footnote omitted; internal quotation marks omitted.) *Handsome, Inc.* v. *Planning & Zoning Commission*, 317 Conn. 515, 525–26, 119 A.3d 541 (2015).

"If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . Because standing implicates the court's subject matter jurisdiction, the plaintiff ultimately bears the burden of establishing standing. . . . Furthermore, [a] trial court's determination that it lacks subject matter jurisdiction because of a plaintiff's lack of standing is a conclusion of law that is subject to plenary review on appeal." (Internal quotation marks omitted.) *Cambo-*

*dian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 395, 941 A.2d 868 (2008). With these principles in mind, we turn to the plaintiff's claims.

The plaintiff contends that the trial court improperly determined that she lacks standing to appeal the department's decision.[16] Specifically, the plaintiff claims that she has a specific, personal and legal interest in: (1) the entire substantiation process because it implicated her reputational and privacy interests by releasing sensitive information about allegations of sexual abuse against her without affording her the opportunity to participate in the substantiation hearing; and (2) the department's decision because the alleged perpetrator used that decision in a collateral family court proceeding, implicating her constitutional rights to safety and family integrity.[17] The department responds that the trial court correctly concluded that the plaintiff lacks standing to appeal from the department's decision. Specifically, the department claims that the plaintiff did not establish that she has a specific, personal and legal interest in the substantiation process that is distinguishable from that of the general public and that the plaintiff's claims regarding the use of the substantiation decision in a collateral family court proceeding do not give rise to such an interest in the department's decision. We agree with the department.

Resolution of the plaintiff's claims requires us to examine the statutory scheme and the purpose of the central registry and the substantiation process. We have previously explained that the "legislature's stated purpose in requiring the department to maintain the [central] registry is 'to prevent or discover abuse of children . . . .' " *Hogan* v. *Dept. of Children & Families*, supra, 290 Conn. 572–73, quoting General Statutes § 17a-101k (a). In *Hogan*, this court noted that, in enacting the central registry statutes, the legislature recognized the consequences of placing an individual's name on the central registry and expressed concern about ensuring that alleged perpetrators are provided with adequate procedural due process protections. *Hogan* v. *Dept. of Children & Families*, supra, 581.

The department claims, and the trial court found, that the present case is substantially similar to *Doe* v. *Board of Education*, United States District Court, Docket No. 3:11CV1581 (JBA) (D. Conn. September 17, 2012). The plaintiff claims that *Board of Education* is distinguishable from the present case because the reversal of the department's substantiation finding in *Board of Education* occurred at the time of the internal review rather than at the substantiation hearing, as in the present case. Although we are not bound by it, we agree with the reasoning of *Board of Education*, and find it useful for our resolution of the plaintiff's appeal.

In *Board of Education*, after an investigation, the

department substantiated allegations that the plaintiff minor child had been sexually abused by an educator in the town's school system. Id. After an internal review, the department reversed its finding that the educator had abused the minor child. Id. The department denied the repeated requests of the minor child's parents for an opportunity to participate in the department's review proceedings and to rebut the findings of the department's internal review. Id.

Thereafter, the plaintiffs, the minor child and his parents, brought a claim in federal court alleging, inter alia, that the department's "internal review process violated their constitutional rights under the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment [to the United States constitution] in that they were deprived of a meaningful opportunity to know the basis for the [department's] determination of abuse and to participate in a hearing or review if they disagreed with that determination." Id. In response, the department contended that the plaintiffs lacked standing to bring their due process claims because the department's "internal review process conducted under . . . § 17a-101k is an administrative enforcement decision akin to the decision whether or not to pursue a criminal prosecution." Id. The court in *Board of Education* granted the department's motion to dismiss for lack of standing, reasoning as follows: "A state child welfare agency's review of its decision to list an individual on the state [child abuse] registry is sufficiently similar to a prosecuting authority's review of a criminal complaint that a third party lacks a judicially cognizable interest in the prosecution or nonprosecution of that complaint . . . . While [the] [p]laintiffs here certainly had a personal interest in the outcome of [the department's] internal review of the decision to list [the educator's] name on the state [child abuse] registry, legally, this interest is not distinguishable from the general public's interest in protecting children. The internal review procedures were established to safeguard the due process rights of those who have been accused of abuse and listed on the state [child abuse] registry, and thus [the educator], rather than [the] [p]laintiffs, was the party-in-interest for the internal review conducted by [the department]." Id.

We are persuaded by the court's reasoning in *Board of Education*. Like the trial court, we are unconvinced by the plaintiff's claim that *Board of Education* is distinct from the present case on the ground that in *Board of Education* the department reversed its substantiation finding at the internal review stage rather than at the substantiation hearing. As explained in *Hogan* and *Board of Education*, the purpose behind the substantiation appeal process is to ensure that alleged perpetrators of abuse or neglect are afforded an opportunity to present evidence to rebut the department's findings due to the potential adverse effects of being listed on the central registry. See *Hogan* v. *Dept. of Children & Fam-*

*ilies*, supra, 290 Conn. 570–71; *Doe* v. *Board of Education*, supra, United States District Court, Docket No. 3:11CV1581 (JBA). In contrast to an abuse or neglect proceeding conducted pursuant to General Statutes § 46b-129 and a termination of parental rights proceeding pursuant to General Statutes § 17a-112, in which the alleged victim is a party in interest, the plaintiff in the present case was not an authorized party to the substantiation proceeding. See, e.g., *In re Melody L.*, 290 Conn. 131, 157, 962 A.2d 81 (2009) (holding that children have standing to appeal from judgment terminating parental rights of their parents), overruled on other grounds by *State* v. *Elson*, 311 Conn. 726, 746–47, 91 A.3d 862 (2014); see also Policy Manual, supra, § 22-12-6.

At oral argument before this court, counsel for the plaintiff conceded that the central registry serves a "legitimate public purpose that is not unique to [the plaintiff]," but further explained to this court that this acknowledgment was not salient to the plaintiff's argument because the plaintiff is more concerned with the substantiation of sexual abuse and emotional neglect than the listing of the alleged perpetrator's name on the central registry. Counsel for the plaintiff contended that the department had made two separate findings regarding the alleged perpetrator: (1) a finding substantiating claims of sexual abuse and emotional neglect against the plaintiff; and (2) a finding that the alleged perpetrator posed a risk to the general public. Counsel for the plaintiff asserted that the finding of substantiation directly affects the plaintiff herself. We disagree.

"The predicate to consideration for placement of one's name on the [central] registry is a 'finding that an individual is responsible for abuse or neglect of a child pursuant to subsection (b) of [§] 17a-101g . . . .' " *Hogan* v. *Dept. of Children & Families*, supra, 290 Conn. 573, quoting General Statutes § 17a-101k (b). As previously noted in this opinion, the department must generally substantiate abuse or neglect and make an independent finding that the alleged perpetrator "poses a risk to the health, safety or well-being of children" before recommending that the individual's name be placed on the central registry. General Statutes § 17a-101g (b) (2); see also Regs., Conn. State Agencies § 17a-101k-3 (c); Policy Manual, supra, § 34-2-8. In some cases, however, the entry of the alleged perpetrator's name on the central registry is mandatory. See Regs., Conn. State Agencies § 17a-101k-3 (b); see also footnote 14 of this opinion. For example, an individual is automatically "deemed to pose a risk to the health, safety or well-being of children, and listed on the central registry, when . . . (2) the substantiation is for sexual abuse and the individual responsible is over sixteen . . . years of age . . . ." Regs., Conn. State Agencies § 17a-101k-3 (b). Furthermore, the name of an individual who has been substantiated as the individual responsible for

the sexual abuse of a child may be entered on the central registry prior to the exhaustion or waiver of all administrative appeals available to the alleged perpetrator. See General Statutes § 17a-101g (d).

In the present case, placement of the alleged perpetrator's name on the central registry was mandatory as sexual abuse was substantiated and the person responsible was more than sixteen years of age. Therefore, contrary to the plaintiff's argument, the department was not required to conduct a separate analysis of whether the alleged perpetrator "pose[d] a risk to the health, safety or well-being of children . . . ." Regs., Conn. State Agencies § 17a-101k-3 (b). Because the department in the present case was not required to make any additional findings other than the determination that the allegations of sexual abuse were substantiated before placing the alleged perpetrator's name on the central registry, we are not persuaded by the plaintiff's argument bifurcating the department's findings and we conclude that the plaintiff does not have a specific, personal and legally protected interest in the department's substantiation finding. This finding was an essential element of the department's determination that an individual's name should be entered on the central registry, which, as previously discussed in this opinion, is for the benefit of the general public. See *Hogan* v. *Dept. of Children & Families*, supra, 290 Conn. 581; *Doe* v. *Board of Education*, supra, United States District Court, Docket No. 3:11CV1581 (JBA). We next consider the plaintiff's specific asserted interests.

The plaintiff first claims that she has a specific, personal and legal interest in the entire substantiation process because it implicated her reputational and privacy interests.[18] Specifically, the plaintiff claims that because she was statutorily required to participate in the department's initial substantiation investigation and testified, revealing personal information, this created a personal and legal interest in the entire process during which sensitive information about the plaintiff was released. See General Statutes § 17a-101g (a) and (b). Although we recognize that the plaintiff was required to participate in the investigation and that her information must remain confidential throughout the investigative and substantiation appeal process, this does not give the plaintiff a specific, personal and legal interest in the department's decision from which the plaintiff now appeals.

As we explained in *Hogan*, the department's determination to place an individual's name on the central registry is generally confidential. *Hogan* v. *Dept. of Children & Families*, supra, 290 Conn. 570. There are limited statutory exceptions to this rule, however, to aid the department in its investigation of child abuse or neglect, and to permit specific governmental agencies or individuals who provide child protection services,

child care service licensing agencies, and agencies "that employ persons charged with child protection" to request background checks. Id.; see also General Statutes § 17a-101k (b) (3); Regs., Conn. State Agencies § 17a-101k-15.

In the present case, upon receiving a report of possible child abuse, the department was statutorily required to initiate an investigation of the matter and to meet with the alleged victim and her family. General Statutes § 17a-101g (a) and (b); see also Policy Manual, supra, § 34-3-5. Furthermore, because the report in this case involved allegations of sexual abuse, the department was also required to notify the State's Attorney's Office, local law enforcement, and the Bureau Chief of Child Welfare Services once it had substantiated the allegations of abuse. Policy Manual, supra, § 34-3-6; see also footnote 13 of this opinion. In support of her claim regarding her reputational and privacy interests, the plaintiff relies solely on a newspaper article written about a criminal prosecution of the alleged perpetrator. The newspaper article discussed the plaintiff's age, the fact that the plaintiff was a relative of the alleged perpetrator, the location of the alleged incident, and a video that was used as evidence in support of the abuse in the collateral criminal proceeding. Nothing in this article indicates that the department revealed any confidential information from the investigative process. Thus, the plaintiff fails to demonstrate that the department disclosed her information outside the requirements of the investigation into her allegations of abuse.

Although we recognize the importance of maintaining the confidentiality of the victims of abuse and neglect, their reputation and privacy rights do not give rise to a specific, personal and legal interest in the entire substantiation process. Therefore, an administrative appeal from the department's final decision at a substantiation hearing is not a proper avenue to vindicate the plaintiff's reputational and privacy interests.

The plaintiff further claims that the use of the department's decision in a collateral family court proceeding implicated her constitutional rights to safety and family integrity, which gave rise to a specific, personal and legal interest in the department's decision.[19] Specifically, the plaintiff asserts that the alleged perpetrator used the department's decision in a collateral family court proceeding as evidence that the alleged perpetrator had not sexually abused the plaintiff and that this substantially increased the chance of reunification with the plaintiff. We disagree. The fact that the department's decision, or prior substantiation finding, was used in a collateral family court proceeding does not create a specific, personal and legal interest in the department's decision. Instead, if the plaintiff challenges the use of the department's decision in the collateral proceeding, that must be addressed in that collateral proceeding or

in an appeal therefrom.

Both of the plaintiff's claims, as we understand them, relate to the department's failure to notify her and allow her to participate in the substantiation hearing. Our resolution of the present appeal does not call upon us to conduct a substantive review of the department's procedures; therefore, we decline the plaintiff's invitation to do so now. In the present case, the plaintiff has failed to establish that she has any constitutional rights grounded in the department's decision and she may not assert interests that stem from a challenge to the department's overall substantiation appeal process in an attempt to circumvent the requirement of subject matter jurisdiction.

On the basis of the foregoing analysis, we conclude that the plaintiff has not established a specific, personal and legally protected interest in the department's decision greater than any other member of the community. The plaintiff's asserted interests in her reputation, privacy, safety, and family integrity constitute an insufficient basis upon which classical aggrievement may be claimed. Because the plaintiff has failed to satisfy the first prong of the classical aggrievement test, we need not reach the question of whether the plaintiff's asserted interest "has been specially and injuriously affected" by the department's decision. (Internal quotation marks omitted.) *Handsome, Inc.* v. *Planning & Zoning Commission*, supra, 317 Conn. 526.

The plaintiff does not specifically claim statutory aggrievement on appeal to this court. Nevertheless, to the extent that her claim that there is no statutory, regulatory, or Policy Manual provision that bars an alleged victim from participating in a substantiation hearing can be understood as a statutory aggrievement claim, we address it. The department contends that the statutory scheme does not entitle the alleged victim to formal participation in the administrative hearing process. We agree with the department and conclude that, to the extent that the plaintiff contends that she was statutorily aggrieved by the department's substantiation appeal process, the statutory scheme does not create an interest for the alleged victim in the substantiation hearing.

A review of the statutory scheme demonstrates that the alleged victim is not a party to the substantiation appeal process and, as we have discussed previously in this opinion, the process is designed to protect the community. Although the alleged victim is entitled to be notified of the outcome of the department's initial investigation into the alleged victim's allegations of abuse or neglect; see Policy Manual, supra, § 34-3-6; the department's substantiation appeal process does not afford the alleged victim an opportunity to challenge the department's determination that such allegations are unfounded. Moreover, despite the fact that the

department is required to provide the alleged perpetrator with notice of the substantiation hearing, no statute, regulation, or provision in the Policy Manual requires that the alleged victim be informed of the substantiation hearing or its outcome. Lastly, it is notable that the alleged victim who is the subject of the substantiation is prohibited from testifying at the substantiation hearing. Regs., Conn. State Agencies § 17a-101k-8 (h); see also Policy Manual, supra, § 22-12-7.

In support of her argument that she maintains an interest in the department's decision, the plaintiff cites to a provision in the Policy Manual that provides that "[o]ther persons may be permitted to be *present* for all or part of the hearing at the discretion of the hearing officer . . . ." (Emphasis added.) Policy Manual, supra, § 22-12-6. The fact that "other persons" may be present at a substantiation hearing at the discretion of the hearing officer, however, does not translate into a right for the alleged victim to participate in these hearings. In fact, in light of the lack of a provision entitling the alleged victim to notice of the substantiation hearing and the prohibition on the alleged victim's testimony at the substantiation hearing, it seems clear that this provision is not intended to provide alleged victims with an opportunity to be present at substantiation hearings. See General Statutes § 17a-101k (c) (3); Regs., Conn. State Agencies § 17a-101k-8 (h). Nothing in the statutory scheme makes alleged victims parties to substantiation hearings or otherwise affords them rights to appeal from the reversal of a decision. Accordingly, we conclude that the plaintiff is not "within the zone of interests" intended to be covered by the statutory scheme. (Internal quotation marks omitted.) *Handsome, Inc.* v. *Planning & Zoning Commission*, supra, 317 Conn. 525.

The plaintiff cannot demonstrate that the statutory scheme was designed to protect any interest of hers or that she has a specific, personal and legal interest in the department's decision, or any part of the department's substantiation appeal process. Therefore, the plaintiff is not a proper party to request an adjudication of the issue. Accordingly, we conclude that the trial court properly dismissed the plaintiff's claims for lack of standing.

The judgment is affirmed.

In this opinion the other justices concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[1] We note that, although Isabella D. is the named plaintiff, the only claim in the present case was brought on Isabella D.'s behalf by her mother as next friend. We also note that, although Isabella D.'s mother is also named as a plaintiff in the present case, she has not asserted any claim in her individual capacity. For the sake of simplicity, we refer to Isabella D., acting through her mother as next friend, as the plaintiff.

[2] We note that the Commissioner of Children and Families (commissioner) was also named as a defendant in the underlying action and is a party

to the present appeal. Because the commissioner acts on behalf of the department, references in this opinion to the department include the commissioner. References to the commissioner contained within quotations have been retained for the sake of simplicity.

[3] Section 17a-101k-1 (14) of the Regulations of Connecticut State Agencies defines " '[c]entral registry' " as "the confidential data file maintained as part of the department's computerized database, of persons who have been substantiated as individuals responsible for an act or acts of child abuse or neglect and for whom the commissioner has made a determination, based upon a standard of reasonable cause, that the individual poses a risk to the health, safety or well-being of children . . . ."

Before the trial court, the plaintiff framed the issue as "whether the [plaintiff] has standing to seek reconsideration of the finding that insufficient evidence existed to support a finding of substantiation of abuse." The department contended before the trial court that the dispositive issue was "whether the [plaintiff] has standing to appeal the actual decision that insufficient evidence existed to support a finding of substantiation of abuse." The trial court addressed this discrepancy and noted that "[w]hile the plaintiff may be technically correct, it does not appear to make a difference because if a minor child lacks standing to challenge the underlying determination, the court does not see how she can have standing to challenge a refusal to reconsider that determination." We agree with the trial court and find it necessary to address only whether the plaintiff has standing to appeal from the decision of the department determining that there was insufficient evidence to support a finding of substantiation of abuse and neglect.

[4] We note that the department also offered two alternative grounds for affirmance of the trial court's judgment: (1) the plaintiff's petition for reconsideration did not comply with General Statutes § 4-181a because the plaintiff was not a party to the substantiation hearing; and (2) the department's denial of the plaintiff's petition for reconsideration was not a " '[f]inal decision' " pursuant to General Statutes § 4-166 (5) and, therefore, was not appealable to the trial court pursuant to General Statutes § 4-183 (a). We do not reach either of the department's alternative grounds for affirmance, however, because we conclude that the plaintiff lacks standing to bring this action.

[5] General Statutes § 17a-101g provides in relevant part: "(a) Upon receiving a report of child abuse or neglect, as provided in sections 17a-101a to 17a-101c, inclusive, or section 17a-103, in which the alleged perpetrator is (1) a person responsible for such child's health, welfare or care, (2) a person given access to such child by such responsible person, or (3) a person entrusted with the care of a child, the Commissioner of Children and Families, or the commissioner's designee, shall cause the report to be classified and evaluated immediately. If the report contains sufficient information to warrant an investigation, the commissioner shall make the commissioner's best efforts to commence an investigation of a report concerning an imminent risk of physical harm to a child or other emergency within two hours of receipt of the report and shall commence an investigation of all other reports within seventy-two hours of receipt of the report. A report classified by the commissioner, or the commissioner's designee, as lower risk may be referred for family assessment and services pursuant to subsection (g) of this section. Any such report may thereafter be referred for standard child protective services if safety concerns for the child become evident. A report referred for standard child protective services may be referred for family assessment and services at any time if the department determines there is a lower risk to the child. If the alleged perpetrator is a school employee, as defined in section 53a-65, or is employed by an institution or facility licensed or approved by the state to provide care for children, the department shall notify the Department of Education or the state agency that has issued such license or approval to the institution or facility of the report and the commencement of an investigation by the Commissioner of Children and Families. The department shall complete any such investigation not later than forty-five calendar days after the date of receipt of the report. If the report is a report of child abuse or neglect in which the alleged perpetrator is not a person specified in subdivision (1), (2) or (3) of this subsection, the Commissioner of Children and Families shall refer the report to the appropriate local law enforcement authority for the town in which the child resides or in which the alleged abuse or neglect occurred.

"(b) The investigation shall include a home visit at which the child and any siblings are observed, if appropriate, a determination of the nature, extent and cause or causes of the reported abuse or neglect, a determination of the person or persons suspected to be responsible for such abuse or

neglect, the name, age and condition of other children residing in the same household and an evaluation of the parents and the home. The report of such investigation shall be in writing. The investigation shall also include, but not be limited to, a review of criminal conviction information concerning the person or persons alleged to be responsible for such abuse or neglect and previous allegations of abuse or neglect relating to the child or other children residing in the household or relating to family violence. After an investigation into a report of abuse or neglect has been completed, the commissioner shall determine, based upon a standard of reasonable cause, whether a child has been abused or neglected, as defined in section 46b-120. If the commissioner determines that abuse or neglect has occurred, the commissioner shall also determine whether: (1) There is an identifiable person responsible for such abuse or neglect; and (2) such identifiable person poses a risk to the health, safety or well-being of children and should be recommended by the commissioner for placement on the child abuse and neglect registry established pursuant to section 17a-101k. If the commissioner has made the determinations in subdivisions (1) and (2) of this subsection, the commissioner shall issue notice of a recommended finding to the person suspected to be responsible for such abuse or neglect in accordance with section 17a-101k. . . .

"(d) If the child abuse or neglect resulted in or involves (1) the death of a child; (2) the risk of serious physical injury or emotional harm of a child; (3) the serious physical harm of a child; (4) the arrest of a person due to abuse or neglect of a child; (5) a petition filed by the commissioner pursuant to section 17a-112 or 46b-129; or (6) sexual abuse of a child, entry of the recommended finding may be made on the child abuse or neglect registry and information concerning the finding may be disclosed by the commissioner pursuant to a check of the child abuse or neglect registry or request for information by a public or private entity for employment, licensure, or reimbursement for child care purposes pursuant to programs administered by the Department of Social Services or pursuant to any other general statute that requires a check of the child abuse or neglect registry, prior to the exhaustion or waiver of all administrative appeals available to the person suspected to be responsible for the abuse or neglect as provided in section 17a-101k. . . ."

[6] Section 17a-101k-4 (a) of the Regulations of Connecticut State Agencies provides: "Any person: (1) who has been substantiated as an individual responsible for child abuse or neglect; (2) against whom a determination is made that the individual's name should be entered on the central registry; or (3) who is the parent or guardian of a child who has been substantiated as an individual responsible for child abuse or neglect, and who disagrees with such substantiation or registry finding may request an internal review of the substantiation or registry finding."

[7] Section 17a-101k-11 (a) of the Regulations of Connecticut State Agencies provides that "[a]ny request for reconsideration of a final decision [of the department's hearing officer] is governed by section 4-181a of the Connecticut General Statutes." General Statutes § 4-181a (a) (1) provides in relevant part: "Unless otherwise provided by law, a party in a contested case may, within fifteen days after the personal delivery or mailing of the final decision, file with the agency a petition for reconsideration of the decision . . . ."

[8] In her complaint, the plaintiff alleged, inter alia, that: (1) she was "aggrieved" within the meaning of § 4-183 because "[t]he conduct of the substantiation hearing was arbitrary, capricious, characterized by abuses of discretion and clearly unwarranted exercises of discretion—including, but not limited to, the consideration of inflammatory, unsupported and uncorroborated hearsay evidence"; (2) General Statutes § 17a-101k is unconstitutional, as applied to the facts of this case; and (3) the department "failed to properly, completely or fully present all relevant and reasonably available evidence at the substantiation hearing . . . ."

[9] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[10] See footnote 5 of this opinion.

[11] General Statutes § 17a-101k provides in relevant part: "(a) The Commissioner of Children and Families shall maintain a registry of the commissioner's findings of abuse or neglect of children pursuant to section 17a-101g that conforms to the requirements of this section. The regulations . . . shall provide for the use of the registry on a twenty-four-hour daily basis to prevent or discover abuse of children and the establishment of a hearing process for any appeal by a person of the commissioner's determination

that such person is responsible for the abuse or neglect of a child pursuant to subsection (b) of section 17a-101g. The information contained in the registry and any other information relative to child abuse, wherever located, shall be confidential, subject to such statutes and regulations governing their use and access as shall conform to the requirements of federal law or regulations. Any violation of this section or the regulations adopted by the commissioner under this section shall be punishable by a fine of not more than one thousand dollars or imprisonment for not more than one year.

"(b) Upon the issuance of a recommended finding that an individual is responsible for abuse or neglect of a child pursuant to subsection (b) of section 17a-101g, the commissioner shall provide notice of the finding, by first class mail, not later than five business days after the issuance of such finding, to the individual who is alleged to be responsible for the abuse or neglect. . . .

"(c) (1) Following a request for appeal, the commissioner or the commissioner's designee shall conduct an internal review of the recommended finding to be completed no later than thirty days after the request for appeal is received by the department. The commissioner or the commissioner's designee shall review all relevant information relating to the recommended finding, to determine whether the recommended finding is factually or legally deficient and ought to be reversed. Prior to the review, the commissioner shall provide the individual access to all relevant documents in the possession of the commissioner regarding the finding of responsibility for abuse or neglect of a child, as provided in section 17a-28.

"(2) The individual or the individual's representative may submit any documentation that is relevant to a determination of the issue and may, at the discretion of the commissioner or the commissioner's designee, participate in a telephone conference or face-to-face meeting to be conducted for the purpose of gathering additional information that may be relevant to determining whether the recommended finding is factually or legally deficient.

"(3) If the commissioner or the commissioner's designee, as a result of the prehearing review, determines that the recommended finding of abuse or neglect is factually or legally deficient, the commissioner or the commissioner's designee shall so indicate, in writing, and shall reverse the recommended finding. The commissioner shall send notice to the individual by certified mail of the commissioner's decision to reverse or maintain the finding not later than five business days after the decision is made. If the finding is upheld, the notice shall be made in accordance with section 4-177 and shall notify the individual of the right to request a hearing. The individual may request a hearing not later than thirty days after receipt of the notice. The hearing shall be scheduled not later than thirty days after receipt by the commissioner of the request for a hearing, except for good cause shown by either party.

"(d) . . . (2) At the hearing, the individual may be represented by legal counsel. The burden of proof shall be on the commissioner to prove that the finding is supported by a fair preponderance of the evidence submitted at the hearing.

"(3) Not later than thirty days after the conclusion of the hearing, the hearing officer shall issue a written decision to either reverse or uphold the finding. The decision shall contain findings of fact and a conclusion of law on each issue raised at the hearing.

"(e) Any individual aggrieved by the decision of the hearing officer may appeal the decision in accordance with section 4-183. . . ."

[12] Section 17a-101k-1 (11) of the Regulations of Connecticut State Agencies defines " '[s]ubstantiated' " to mean "that the department has found after investigation of a report, pursuant to section 17a-101g of the Connecticut General Statutes, that there is reasonable cause to believe that child abuse or neglect has occurred and that a specific person is the individual responsible for an act or acts of child abuse or neglect . . . ."

[13] We note that the aforementioned individuals are notified of the outcome of the department's initial investigation regardless of whether the allegations are substantiated or unsubstantiated. Policy Manual, supra, § 34-3-6. Furthermore, in the event that allegations of sexual abuse or serious physical abuse are substantiated, the department must notify the State's Attorney's Office, local law enforcement, and the Bureau Chief of Child Welfare Services. Id.

[14] Section 17a-101k-3 (b) of the Regulations of Connecticut State Agencies provides: "A person shall be deemed to pose a risk to the health, safety or well-being of children, and listed on the central registry, when: (1) the child abuse or neglect resulted in or involves (A) the death of a child, (B) the

risk of serious physical injury of a child, or (C) the serious physical or emotional harm of a child; (2) the substantiation is for sexual abuse and the individual responsible is over sixteen (16) years of age; (3) there is a second substantiation for physical or emotional abuse; (4) the individual responsible for physical or emotional abuse is a person entrusted with the care of a child within the meaning of section 17a-101k-1 (6) of the Regulations of Connecticut State Agencies; (5) the individual responsible is arrested for the act of abuse or neglect that is substantiated; or (6) a petition alleging that a child is neglected or uncared for, or a petition alleging grounds for the termination of parental rights pursuant to section 46b-129 or section 17a-112 of the Connecticut General Statutes respectively, and based at least in part on the allegations that form the basis of the substantiation, is pending in Superior Court or on appeal."

[15] Section 22-12-6 of the Policy Manual also provides that in the event that the alleged perpetrator is a minor, the parent or guardian of such individual is also a party to the substantiation hearing.

[16] We note that the plaintiff also contends on appeal that the victim's rights amendment of the Connecticut constitution is broad enough to afford the plaintiff protection in this case. See Conn. Const., amend. XXIX. At oral argument before the trial court, however, the plaintiff conceded that this constitutional provision does not apply to the present case. Therefore, we decline to address this claim on appeal.

[17] The plaintiff asserts that her constitutionally protected rights to safety and family integrity were harmed by a collateral family court proceeding and cites to *Santosky* v. *Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), *Wooley* v. *Baton Rouge*, 211 F.3d 913 (5th Cir. 2000), and *In re Angel A.*, Superior Court, judicial district of Middlesex, Child Protection Session at Middletown, 2004 WL 2167036, *1 (August 27, 2004), in support of her claim. We do not find these cases to be relevant authority because they involved parental rights termination and custody proceedings, which are not the subject of this appeal.

[18] The plaintiff cites to *Doe* v. *Boland*, 698 F.3d 877 (6th Cir. 2012), and *Doe* v. *Barrington*, 729 F. Supp. 376 (D.N.J. 1990), in support of her claim. We find these cases wholly inapplicable to the present case.

In *Boland*, in an attempt to help the defendants avoid child pornography charges, an attorney downloaded images of two identifiable children from a stock photography website and digitally manipulated the photographs to make it appear as though the children were engaged in sexual acts. *Doe* v. *Boland*, supra, 698 F.3d 879. The question presented in *Boland* was whether the plaintiffs satisfied the requirements for obtaining relief under 18 U.S.C. § 2255, which provides a civil remedy of a minimum of $150,000 for "[a]ny person who, while a minor, was a victim" of various sex crimes "and who suffers personal injury as a result . . . ." Id., 880. The court in *Boland* held that "[b]y sharing the morphed images with defense counsel and court staff and displaying the images in a courtroom, [the attorney] invaded [the children's legally protected reputational] interests" and that this sufficed "to establish standing . . . ." Id., 882.

The plaintiff further cites to *Doe* v. *Barrington*, supra, 729 F. Supp. 376, for the general proposition that an individual maintains a right to privacy under the fourteenth amendment. In *Barrington*, after police officers revealed to the plaintiff's neighbors that the plaintiff's husband had contracted Acquired Immune Deficiency Syndrome (AIDS), the neighbor contacted the media and the parents of children in the local school, which the plaintiff's four children also attended. Id., 378–79. The plaintiff, as guardian for her minor children, brought an action pursuant to 42 U.S.C. § 1983 against the police officers for violation of her children's rights to privacy. Id., 386. The court held that the plaintiff's "children ha[d] standing to sue for the violation of their right to privacy from governmental disclosure of their father's infection with AIDS" because a family member's diagnosis with AIDS constitutes a "personal matter" that is constitutionally protected. Id. Neither of these cases supports the plaintiff's claim that she has a specific, personal and legal interest in the proceeding in the present case because it implicated her reputational and privacy interests.

[19] The plaintiff further claims that her interests were harmed because she was deprived of the protective services that flow from a substantiation finding. To the extent that the plaintiff contends that this gives her a specific, personal and legal interest in the substantiation process, we decline to address this contention because the plaintiff raised it for the first time in her reply brief. See, e.g., *Rathbun* v. *Health Net of the Northeast, Inc.*, 315 Conn. 674, 703–704, 110 A.3d 304 (2015).